No. 25-5553

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GAVIN NEWSOM, *in his official capacity as Governor of the State of California*; STATE OF CALIFORNIA,

    *Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*; PETER HEGSETH, *in his official capacity as Secretary of the Department of Defense*; UNITED STATES DEPARTMENT OF DEFENSE,

    *Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California

**REPLY IN SUPPORT OF
EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL**

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
ANNA O. MOHAN
J. KAIN DAY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7517*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-2689*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................2

    A.    The federal government is likely to prevail on the merits. ..........................2

        1.    Plaintiffs' PCA claim fails on threshold grounds. ............................2

        2.    The federal government is not violating the PCA. ..........................6

    B.    The remaining factors support a stay............................................................10

CONCLUSION ............................................................................................................ 12

CERTIFICATE OF COMPLIANCE

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................2

    A.    The federal government is likely to prevail on the merits. ..........................2

        1.    Plaintiffs' PCA claim fails on threshold grounds. ............................2

        2.    The federal government is not violating the PCA. ..........................6

    B.    The remaining factors support a stay............................................................10

CONCLUSION ............................................................................................................ 12

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                     **Page(s)**

*Alexander v. Sandoval*,
　532 U.S. 275 (2015) ............................................................................... 3, 5

*Armstrong v. Exceptional Child Ctr., Inc.*,
　575 U.S. 320 (2015) .................................................................................. 3

*Canadian Com. Corp. v. Department of Air Force*,
　514 F.3d 37 (D.C. Cir. 2008) .................................................................... 4

*Chrysler Corp. v. Brown*,
　441 U.S. 281 (1979) .................................................................................. 3

*Dalton v. Specter*,
　511 U.S. 462 (1994) .................................................................................. 4

*In re Debs*,
　158 U.S. 564 (1895) .................................................................................. 7

*In re Neagle*,
　135 U.S. 1 (1890) ...................................................................................... 7

*Murphy Co. v. Biden*,
　65 F.4th 1122 (9th Cir. 2023) ................................................................... 4

*NRC v. Texas*,
　605 U.S. 665 (2025) .................................................................................. 2

*Shivkov v. Artex Risk Sols., Inc.*,
　974 F.3d 1051 (9th Cir. 2020) .................................................................. 7

*Sierra Club v. Trump*,
　963 F.3d 874 (9th Cir. 2020) .................................................................... 4

*United States v. Davis*,
　588 U.S. 445 (2019) .................................................................................. 5

*United States v. Dreyer*,
　804 F.3d 1266 (9th Cir. 2015) ............................................... 3-4, 4, 8, 10

*United States v. Khan*,
　35 F.3d 426 (9th Cir. 1994) .................................................................. 7, 8

*United States v. Klimavicius-Viloria*,
  144 F.3d 1249 (9th Cir. 1998) ...................................................................................7, 8

*United States v. Texas*,
  599 U.S. 670 (2023) ..................................................................................................... 3

**Statutes:**

10 U.S.C. § 15 (1925) .......................................................................................................3

10 U.S.C. § 12406 ...................................................................................................... 5, 6

10 U.S.C. § 12406(1)-(2) ..................................................................................................6

10 U.S.C. § 12406(3) ............................................................................................... 1, 5, 6

20 Stat. 145 (1878) ........................................................................................................... 3

**Other Authorities:**

*Auth. to Use Troops to Prevent Interference With Fed. Emps. by Mayday Demonstrations & Consequent Impairment of Gov't Functions*, 1 Op. O.L.C. Supp. 343 (1971) .......................9

Jennifer K. Elsea, Cong. Rsch. Serv., R42659, *The Posse Comitatus Act and Related Matters: The Use of the Military to Execute Civilian Law* (2018) ..................................................................................................................5

U.S. Dep't of Def., Instr. 3025.21, *Defense Support of Civilian Law Enforcement Agencies* (Feb. 27, 2013) ...........................................................................................................9

*Use of the Nat'l Guard to Support Drug Interdiction Efforts in the District of Columbia*,
  13 Op. O.L.C. 91 (1989) ...............................................................................................5

iii

## INTRODUCTION

The President mobilized the National Guard to protect federal personnel and property from violence targeted at federal officials, including officials attempting to enforce our immigration laws. Guard members have adhered to this limited protective mission and have not engaged in law enforcement. The district court's latest injunction hamstrings their ability to serve in this role, interjects the court as superintendent of military forces, and threatens federal officials with contempt if they misinterpret the court's order. A stay is warranted to ensure that violent forces do not again imperil the safety of federal officers and to prevent unwarranted judicial intrusion into the military chain of command.

Plaintiffs have not overcome the threshold issues that doom their Posse Comitatus Act (PCA) claim. First, plaintiffs lack a cause of action to enforce the PCA. By providing only for criminal enforcement of the PCA, Congress precluded any civil action for injunctive relief, consistent with the Executive's exclusive power to prosecute federal crimes. Second, the PCA itself contains an exception permitting the Armed Forces to execute the laws when expressly authorized by another statute, and Section 12406(3) is such a statute. Plaintiffs' contrary view fails to engage with the text of Section 12406(3) or the PCA. Third, plaintiffs lack standing. They are not harmed in any cognizable way when the lawfully called-up National Guard protects federal personnel and property.

In all events, the federal government is not violating the PCA. As the evidence at trial confirmed, the National Guard has limited its activities to protecting federal personnel and property, which does not constitute "execut[ing] the laws" under the PCA. The Supreme Court observed long ago that the President has constitutional authority to use federal troops for such protective functions. And this Court and the Executive Branch have recognized that the PCA does not impair these critical functions.

Finally, the equities overwhelmingly support a stay. The Guard has been critical to protecting federal personnel, and plaintiffs' speculation about potential future deployments does not support injunctive relief here.

## ARGUMENT

### A. The federal government is likely to prevail on the merits.

#### 1. Plaintiffs' PCA claim fails on threshold grounds.

**a.** Plaintiffs lack a cause of action. *See* Mot.10-13. The PCA is a criminal statute, which does not expressly or impliedly create a private cause of action. Nor is there any basis for crafting an extra-statutory right to seek civil injunctive relief. The Supreme Court has never extended *ultra vires* review to alleged violations of criminal laws, and this Court should not either. *See NRC v. Texas*, 605 U.S. 665, 681 (2025) (explaining how the Court has "strictly limited nonstatutory ultra vires review").

Plaintiffs do not contest that "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations."

2

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). By enacting the PCA as a criminal statute, without any accompanying civil remedies, Congress precluded any private action for civil injunctive relief, consistent with the Executive's exclusive authority to prosecute federal crimes, *see, e.g.*, *United States v. Texas*, 599 U.S. 670, 680 (2023). This explains why there is no historical tradition of allowing civil injunctive relief for criminal violations.

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), underscores the impropriety of creating a cause of action here. There, the Court refused to create an implied "private right of action" under the Trade Secrets Act, a criminal statute that applied only to government actors. *Id.* at 316. The statements plaintiffs cite from that decision (Opp.9) reflect a bygone era, when the Court was more willing to read statutory silence as implying a private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (the Court has "abandoned" that "*ancien regime*").

Plaintiffs rely on "expansive language" in prior versions of the PCA, Opp.8-9, but those provisions support the federal government. The PCA has always been limited to criminal enforcement. *See, e.g.*, 20 Stat. 145, 152 (1878) ("any person willfully violating [the PCA] shall be deemed guilty of a misdemeanor"); 10 U.S.C. § 15 (1925) (same). The PCA's present language and its inclusion in Title 18 only further reinforce this conclusion.

That criminal statutes can be invoked in criminal proceedings or support a challenge to final agency action does not alter this conclusion. *See, e.g.*, *United States v.*

3

*Dreyer*, 804 F.3d 1266, 1272 (9th Cir. 2015) (en banc); *Canadian Com. Corp. v. Department of Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008). Criminal defendants can file a suppression motion without a cause of action, and the Administrative Procedure Act creates the cause of action for challenges to final agency action. Neither circumstance involves an implied or nonstatutory right of action to enforce a criminal statute.

Plaintiffs' attempt to recast their claim as "constitutional" also fails. *See* Opp.10. "[N]ot every *ultra vires* claim will necessarily implicate constitutional concerns," *Murphy Co. v. Biden*, 65 F.4th 1122, 1131 (9th Cir. 2023), and a mere allegation that the Executive violated a statute cannot be sufficient, *see Dalton v. Specter*, 511 U.S. 462, 473 (1994). Rather, there must be some additional claim that the Executive lacked "background constitutional authority" or violated an express prohibition in the Constitution. *Cf. Murphy*, 65 F.4th at 1130; *Sierra Club v. Trump*, 963 F.3d 874, 889-90 (9th Cir. 2020) (vacated on other grounds). Plaintiffs raise no such claim. There is no credible argument that using the lawfully called-up Guard to protect federal personnel and property violates the Constitution.

For similar reasons, plaintiffs' reliance on *Laird* and *Youngstown* is misplaced. Opp.8. "[T]he Government disclaimed any statutory authority" for the President's actions in *Youngstown*, so the case "turned on whether the Constitution authorized the President's actions." *Dalton*, 511 U.S. at 473. No such claim is present here. When a claim concerns "only issues of statutory interpretation," like the one here, "no constitutional question whatever is raised." *Id.* at 474 n.6 (quotation marks omitted).

4

The PCA is not meaningless without a private right of action. Opp.8-9. As plaintiffs' own cases illustrate, courts have allowed criminal defendants to raise asserted violations of the PCA as a basis for suppression. The PCA also serves as an important check against rogue actors—who might willfully use the military as a posse comitatus in contravention of the Executive Branch's authority. And regardless, it is for Congress, not the courts, to provide for causes of action. *See e.g.*, *Alexander*, 532 U.S. at 286.

**b.** Plaintiffs' PCA claim fails at the threshold for another reason: Section 12406(3) fits within an express exception to the PCA. Mot.13-15.

Plaintiffs contend that the federal government's reading of Section 12406 is novel. Opp.17-18. But novelty cannot justify disregarding plain statutory text, and in any event, this interpretation is not novel. *See* Mot.14 (citing Jennifer K. Elsea, Cong. Rsch. Serv., R42659, *The Posse Comitatus Act and Related Matters: The Use of the Military to Execute Civilian Law* 61-62 (2018)); *see also Use of the Nat'l Guard to Support Drug Interdiction Efforts in the District of Columbia*, 13 Op. O.L.C. 91, 91 n.2 (1989).

Plaintiffs suggest that the same phrase, "execute the laws," means one thing in the PCA and another in Section 12406(3). *See* Opp.18. That argument is inconsistent with principles of statutory interpretation. *See e.g.*, *United States v. Davis*, 588 U.S. 445, 458 (2019) (presuming that "the same language in related statutes carries a consistent meaning"). Moreover, on plaintiffs' view of the PCA—as encompassing only "functions traditionally performed by the posse comitatus," Opp.18—it is even clearer

5

that Section 12406(3) fits within an exception. Historical posse activities are precisely the types of law execution one would expect the National Guard to perform where the President "is unable with the regular forces to execute the laws," 10 U.S.C. § 12406(3), not to mention in cases of rebellion or invasion under Sections 12406(1)-(2).

This interpretation does not grant the President overbroad authority. Opp.19-20. Section 12406 provides meaningful limits—requiring that the President make certain judgments before he can federalize the Guard. Nor does the breadth of authority conferred upon the President justify reconsidering the Court's previously articulated standard for reviewing federalization decisions, which recognized the statute's meaningful limits.

**c.** Finally, plaintiffs lack standing. The only injury the district court relied upon—harm to federal-state relations—is not tied to the specific conduct plaintiffs claim was unlawful. *See* A341. And ensuring the safety of federal personnel and property does not intrude upon States' police powers. Plaintiffs focus on injuries that would flow from calling up the National Guard, Opp.6-7, but their PCA claim has nothing to do with the calling up of the Guard.

**2. The federal government is not violating the PCA.**

**a.** Separate from these threshold obstacles, plaintiffs have not established any PCA violation. Plaintiffs do not dispute that the Guard's mission in Los Angeles is limited to protecting federal personnel and property. And the evidence they cite—of

6

Guard members accompanying law-enforcement agents in the field, setting up protective perimeters, and protecting agents as they enforce federal law, *see* Opp.11-13—is consistent with this protective mission. That resolves this case. The PCA forbids willfully ordering the Armed Forces to directly assist in law-enforcement duties, but it does not forbid using the Armed Forces to protect *other* federal personnel engaged in such duties.

That conclusion follows from binding authority that plaintiffs cannot distinguish. *See* Mot.17-21. While the Supreme Court did not squarely address the PCA in *In re Neagle* or *In re Debs*, the Court contemplated that the President could engage in protective functions with "soldiers of the army" when necessary:

> [W]ho can doubt the authority of the president ... to make an order for the protection of the mail, and of the persons and lives of its carriers, by ... providing a sufficient guard, whether it be by soldiers of the army or by marshals of the United States, with a *posse comitatus* properly armed and equipped, to secure the safe performance of the duty of carrying the mail wherever it may be intended to go?

*In re Neagle*, 135 U.S. 1, 65(1890); *see In re Debs*, 158 U.S. 564, 582 (1895) ("If [an] emergency arises, the army of the nation, and all its militia, are at the service of the nation to compel obedience to its laws."). Plaintiffs cannot "blandly shrug [these statements] off because they were not a holding." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1067 (9th Cir. 2020) (quotation marks omitted).

Plaintiffs characterize *United States v. Klimavicius-Violria* and *United States v. Khan* as involving only a "subsidiary" role for the Armed Forces, compared to the

7

purportedly "pervasive" role the Guard played here. Opp.14-15. But in *Klimavicius-Viloria*, Navy personnel boarded a civilian vessel and held the vessel's occupants for three weeks on a Navy ship while they transported the vessel to shore. 144 F.3d 1249, 1256, 1259 (9th Cir. 1998). In *Khan*, the Navy provided "aerial reconnaissance" of a civilian vessel before "intercept[ing]" and boarding the vessel to provide backup security for the Coast Guard. 35 F.3d 426, 431-32 (9th Cir. 1994). The civilian law enforcement conducted the searches, investigations, and arrests, but the Naval forces interacted with civilians while supporting those operations. Plaintiffs are wrong to suggest (Opp.14-15) that this Court limited its holdings to operations on the high seas.

This Court's decision in *United States v. Dreyer*, is consistent with this understanding of the PCA. The Court there held that a Naval Criminal Investigative Service agent engaged in prohibited law enforcement activities because he initiated a search for individuals sharing child pornography online, requested a subpoena for information associated with an IP address, and prepared a report that formed the basis for a search warrant. 804 F.3d at 1270-71. The court had no trouble concluding that those activities constituted impermissible law enforcement but nevertheless recognized that the PCA "permit[s] some indirect assistance," like "backup security" and "logistical support." *Id.* at 1275.

This understanding of the PCA has deep roots in Executive practice. As then-Assistant Attorney General Rehnquist explained in 1971, the Department of Justice

8

has consistently "taken the position that the Posse Comitatus Act ... does not impair the President's inherent authority to use troops for the protection of federal property and federal functions." *Auth. to Use Troops to Prevent Interference With Fed. Emps. by Mayday Demonstrations & Consequent Impairment of Gov't Functions*, 1 Op. O.L.C. Supp. 343, 343 (1971). Department of Defense guidance does not suggest otherwise. *Contra* Opp.11. To the contrary, it explicitly recognizes that "Federal military forces" can "protect Federal property or functions." U.S. Dep't of Def., Instr. 3025.21, *Defense Support of Civilian Law Enforcement Agencies* 17 (Feb. 27, 2013).

Nor will defendants' construction have the sweeping consequences plaintiffs suggest. *See* Opp.13-14, 20-21. The Executive Branch has for decades understood the PCA to permit using Armed Forces to protect federal personnel and property, yet the parade of horribles plaintiffs threaten has not materialized. Deploying Guard members to protect federal personnel as they enforce immigration laws following mob violence that targeted those enforcement efforts is a far cry from using troops in USDA factory inspections or in executing ATF search warrants, *see* Opp.2.

By contrast, plaintiffs' construction threatens upheaval and uncertainty. Plaintiffs concede that some activities, like mail delivery, are permitted, while "forms of assistance historically provided to local sheriffs to prevent civil disorder" are forbidden. Opp.15. But they fail to explain why protecting federal personnel falls into the latter category. Plaintiffs also decline to defend the district court's distinction

9

between the protection of federal personnel and the protection of federal property, suggesting only that federal property "poses a closer question." Opp.15.

**b.** At minimum, defendants' belief that their conduct was lawful is enough to foreclose any "willful" violation of the PCA. Plaintiffs do not defend the district court's conclusion that defendants acted willfully, and rightly so: executive officers plainly do not willfully violate the law when they follow the official, decades-old position of the Executive Branch expressed in opinions of the Office of Legal Counsel. Plaintiffs instead suggest the district court could "clarify the PCA's scope" and issue an injunction without finding a past PCA violation. That theory would afford district courts unprecedented authority to control the Executive Branch. A court could clarify the law, find *no* violation, yet wade into the military command structure, issuing orders governing the training, operations, and deployment of Armed Forces. Plaintiffs offer no authority supporting that extraordinary outcome. They again cite *Dreyer*, but that case involved suppression proceedings, which are inapt. The Court in *Dreyer* also applied PCA-*like* provisions that did not include express willfulness requirements. 804 F.3d at 1272-73.

### B. The remaining factors support a stay.

The equities favor a stay. The National Guard members who remain in Los Angeles continue to play an important role in protecting federal personnel and property, *see* Mot.21-22, and the district court's injunction threatens their ability to serve that function. The injunction also impermissibly interjects the court into the

10

military chain of command, threatening military officers with contempt, criminal prosecution, and judicial second-guessing as they assess what the district court considers to be impermissible law execution.

Plaintiffs, on the other hand, identify no concrete harm from a stay. They point to statements suggesting that National Guard members will be deployed elsewhere in the country. Opp.23. But the injunction, and thus a stay, has no effect on those potential deployments, as it applies only in California. *See* A369. They further suggest that the injunction preserves the balance of state and federal power and important constitutional principles, but that simply repackages their incorrect merits arguments. *See supra* pp.6-10.

11

## CONCLUSION

The Court should stay the district court's order pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
ANNA O. MOHAN

*/s/ J. Kain Day*
J. KAIN DAY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7517*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-2689*
  *Sharon.swingle@usdoj.gov*

September 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) and Local Rules 27-1(d) and 32-3 because it contains 2,593 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ J. Kain Day
J. KAIN DAY